IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM ALEXANDER HOWARD, ) | |
| ) | |
| Petitioner, ) | Case No. 3:13-0292 |
| ) | Senior Judge Haynes |
| v. ) | |
| ) | |
| STATE OF TENNESSEE, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

Petitioner, William Alexander Howard, filed this pro se action seeking the writ of habeas corpus to set aside his state conviction for second degree murder for which he received a sentence of twenty-five (25) years. After review, the Court appointed counsel for Petitioner and granted leave to file an amended petition. (Docket Entry No. 36). In his amended petition,[1] Petitioner asserts the following claims: (1) ineffective assistance of counsel for his trial counsel's failures to advise him adequately on his guilty plea; and (2) that Petitioner's guilty plea was not knowingly and voluntarily entered.

Before the Court is the Respondent's motion to dismiss (Docket Entry No. 39) contending that Petitioner's claims in his amended complaint are time barred under the federal habeas statute of limitations.

---

[1]Rule 15 of the Federal Rules of Civil Procedure applies to a habeas proceeding. Mayle v. Felix, 545 U.S. 644, 649 (2005); Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15 (a), the filing of an amended complaint supersedes the prior complaint. Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986). Thus, the Court deems the amended petition to supersede the pro se petition and the claims therein. Unless adopted and supported by legal memorandum, the Court deems the claims in the pro se petition to be waived.

1

## A. Procedural History

Petitioner was indicted in Davidson County, Tennessee on one count of first degree murder and one count of reckless endangerment. (Docket Entry No. 20-1, at 6-7). Based upon his plea agreement on June 18, 2007, and in exchange, Petitioner pled to second degree murder and the State dismissed the first-degree murder and the reckless endangerment counts. Petitioner was sentenced to twenty-five (25) years. Id. at 8-12. Petitioner did not appeal his conviction and sentence. On March 25, 2008, Petitioner filed a state post-conviction petition for which the state court appointed counsel and later another counsel, but at the evidentiary hearing, Petitioner proceeded pro se. After the evidentiary hearing, the state court denied the petition. Id. at 13-36, 41-42, 54-62, 65-71. On appeal, on December 20, 2011, the Tennessee Court of Criminal Appeals affirmed the trial court's order concluding that Petitioner's guilty plea was knowingly and voluntarily entered and his trial counsel informed Petitioner of the consequences of the plea and did not coerce Petitioner into pleading guilty. On April 11, 2012, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. (Docket Entry No. 20-3, at 32-33). On April 1, 2013, Petitioner filed this action.

## B. Analysis of the Motion

On Petitioner's state post-conviction appeal, the Tennessee Court of Criminal Appeals found the following facts[2]:

> At the start of the hearing, the trial court questioned the Petitioner about whether he was under the influence of any intoxicant or suffering from a mental illness, both questions to which the Petitioner responded negatively. The Petitioner expressed his

---

[2]State appellate court opinion findings can constitute factual findings in a habeas action. Sumner v. Mata, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness 28 U.S.C. § 2254(e).

2

satisfaction with his counsel's representation and his understanding of the plea that he was entering and the sentence he would receive. The trial court ensured that the Petitioner understood the rights he was waiving by pleading guilty and also ensured that the Petitioner was not promised anything or threatened in any way to obtain his plea of guilty.

The State then informed the trial court that, had the case gone to trial, the evidence would have proven:

> that on Tuesday, October the 25th, 2005, at about two-forty-five in the afternoon, the victim, Samuel Kinnard, known as Sammy, left his girlfriend, Latoya Moore's house, at 152 Dellway Drive. He was driving a brown Oldsmobile Cutlass, a car that he usually drove, and he went a short distance to ... 2705 Dickerson Road, to a Shell Gas Station. When he went in one of the people that he saw was a woman by the name of Latasha Quarles. Ms. Quarles would have testified that when he walked into the Shell Gas Station that he looked at her, they said something like, "Good afternoon," or something to that affect, then he walked in. And after he had been in the station for just a couple of minutes, not even that long actually, the [D]efendant came in dressed in a blue dickey—from his head to toe dressed in blue. He put on a blue bandana around his head. He walked in with a black pistol and began shooting at Mr. Kinnard. Mr. Kinnard was hit five times. Once in the left knee cap. Once in the left arm. And three times he was struck in the midsection of his body. All three of those, the Medical Examiner would have testified could have caused death. And, indeed, Mr. Kinnard was found—when the police got there within a few minutes, Mr. Kinnard—there was no pulse and he died shortly thereafter.
>
> The witnesses would have testified that after [the Defendant]—who said nothing when he walked into the Shell Gas Station—after he shot him five times that he, then, turned around and fled the scene. He went to the Dellway Villa Apartments. When he got to the Dellway Villa Apartments he went to Karla Allen's door, knocking on the door. She did not let him in. Kamika Bell, he knocked on her door. And you heard from her on Tuesday of last week, Judge. Ms. Bell would have said that she did—he did knock on her door. The roommate let him in. That he came in. That he asked her to hide the weapon. That he took off his blue dickey. He wrapped his blue dickey around the gun. He left the apartment. And a few—about a week later officers from the Metropolitan Police Department spoke with him, and he did come in, and spoke with Detective Jeffrey Wiser. During

3

> that interview the [D]efendant admitted finally that he did go into the
> Shell Gas Station, that he did shoot and kill Samuel Kinnard, and that
> he did take the weapon and he threw it over the bridge into the river.
>
> Based upon this conduct, the Petitioner pled guilty to second degree murder, and the
> trial court entered an agreed sentence of twenty-five years, to be served at 100%.

Howard v. State of Tennessee, No. M2010-02384-CCA-R3-PC, 2011 WL 6743285, at *1-2 (Tenn. Crim. App., Dec. 20, 2011).

### C. Conclusions of Law

As to Respondent's statute of limitations contention, the Antiterrorism and Effective Death Penalty Act ("AEDPA") that became effective on April 24, 1996, set a one year limitations period for state habeas corpus actions. Under 28 U.S.C. § 2244(d)(1), a person convicted in state court has one (1) year from the time the conviction becomes final on direct appeal to file a federal petition. In Lindh v. Murphy, 521 U.S. 320, 327-29 (1997), the Supreme Court held that the AEDPA was to be applied prospectively, i.e., beginning after April 24, 1996. In Brown v. O'Dea, 187 F.3d 572, 576-77 (6th Cir. 1999), the Sixth Circuit set a one year grace period from the Act's passage, i.e., midnight of April 23, 1997, for the filing of habeas petitions for state prisoners whose convictions were final. Accord Martin v. Jones, 969 F.Supp. 1058, 1061 (M.D. Tenn. 1997). Yet, where a federal habeas action is stayed pending exhaustion of state court remedies, the federal limitations period is tolled. Palmer v. Carlton, 276 F.3d 777, 781 (6th Cir. 2002). Aside from the "stay and abeyance" rule, the federal limitations period can be equitably tolled under the Court's equitable jurisdiction. Souter v. Jones, 395 F.3d 577, 599-600 (6th Cir. 2005).

In addition, under 28 U.S.C. § 2244(d)(2), "[t]he time **during which a properly filed application for State post-conviction** or other collateral review with respect to the pertinent

4

judgment or claim is pending shall not be counted toward any period of limitations under this subsection." Id. (emphasis added). "The [statutory] tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) (quoting Rashid v. Khulmann, 991 F.Supp. 254, 259 (S.D.N.Y.1998) (internal quotation marks omitted)). "[A]n application for post-conviction relief is 'properly filed' within the meaning of § 2244(d)(2) 'when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, ... the time limits upon its delivery.'" Id at 603 (quoting Artuz v. Bennett, 531 U.S. 4, 8 (2000)).

As applied here, under § 2244(d)(1)(A), Petitioner had one year to file this action measured from the date when his conviction "became final." Petitioner's conviction became final under Section 2244(d)(1)(A) on July 18, 2007, based upon Tenn. R. App. P.4(a) that required any appeal in a criminal action to be filed 30 days from the date of a guilty plea. The federal habeas statute of limitations commenced on July 19, 2007 and would expire on July 18, 2008. See Bronaugh v. Ohio, 235 F.3d 280, 285 (6th Cir. 2000). Yet, Petitioner filed his state post-conviction petition on March 25, 2008. Thus, the federal limitations period tolled after 251 days later, on March 25, 2008.[3] The one-year period is tolled during the time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Petitioner's appeal of his state post-conviction petition was finally determined on April 11, 2012 when the Tennessee Supreme Court denied his application for permission to appeal.

---

[3]2008 was a leap year.

Petitioner filed this federal action on April 1, 2013 and by that time the remaining 114 days under the federal habeas statute of limitations elapsed. The claims in the amended petition were filed on April 9, 2014.

The pendency of a federal habeas action does not toll the limitation period for filing of a federal habeas claim. Duncan v. Walker, 533 U.S. 167, 181-82 (2001). Under certain conditions, the relation back doctrine under Fed. R. Civ. P. 15(c)(2) can apply in a federal habeas action, but only to the extent that its application does not conflict with the AEDPA limitation period and the challenged claim is tied to the facts alleged in the original petition. Mayle, 545 U.S. at 649-50. As the Supreme Court stated in Mayle:

> An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.
>
> * * *
>
> Habeas Corpus Rule 11[] permits application of the Federal Rules of Civil Procedure in habeas cases "to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules..." [Section] 2242 specifically provides that habeas applications "may be amended ... as provided in the rules of procedure applicable to civil actions."
>
> * * *
>
> If clams asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance.
>
> * * *
>
> So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.

Id at 650, 654-55, 662, 664.

In his pro se petition (Docket Entry No. 1), Petitioner asserted the following claims:

6

> (1) counsel failed to explain to the Petitioner the full elements of the evidence before allowing/encouraging him to take guilty plea; (2) counsel failed to explain to the Petitioner of the possibility of his constitutional rights being violated; (3) counsel failed to file MOTION TO SUPPRESS Petitioner's statement as requested by Petitioner; and (4) counsel failed to place Petitioner's/clients constitutional rights before counsel's personal opinion/interest!

Id. at 4. Petitioner asserts related facts later in his pro se petition. See id. at 7.

Thus, the Court concludes that Petitioner's claims in his amended petition about his trial counsel and the invalidity of his plea bear a "common core of operative facts" alleged in Petitioner's originally filed federal pro se petition. Mayle, 544 U. S. at 664. Yet, as Petitioner's initial federal petition was untimely, Petitioner must show that he is entitled to equitable tolling.

Equitable tolling is invoked where the petitioner pursued his rights diligently and an extraordinary circumstance barred the timely filing of the habeas action. Holland v. Florida, 560 U.S. 631, 649 (2010). Equitable tolling is a judicial doctrine that extends to federal habeas actions. Souter v. Jones, 395 F.3d 577, 598 (6th Cir. 2005). Yet, the tolling doctrine is invoked only in "rare" and "exceptional circumstances." Thomas v. Smith, 49 F. App'x 576, 578 (6th Cir. 2002). As the Sixth Circuit noted:

> Equitable tolling allows courts to review time-barred *habeas* petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" Robinson v. Easterling, 424 Fed.Appx. 439, 442 (6th Cir. 2011) (quoting Robertson v. Simpson, 624 F.3d 781, 783 (6th Cir. 2010)). Both ineffective assistance of counsel and "a substantial, involuntary delay in learning about the status of their appeals" may constitute extraordinary circumstances sufficient to warrant relief. See id. Despite the presence of such circumstances, the statute of limitations will only be tolled if the circumstances were both beyond the control of the litigant and unavoidable with reasonable diligence. Id. Thus, to demonstrate that he is entitled to equitable tolling, a *habeas* petitioner must establish: (1) that he has diligently pursued his rights; and (2) "that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 130 S.Ct. 2549, 2562 (2010) (internal quotation marks omitted); see also Hall v. Warden, 662 F.3d 745, 749 (6th Cir. 2011). Equitable tolling is granted sparingly and is

7

evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." Ata v. Scutt, 662 F.3d 736, 741 (6th Cir. 2011).

Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 462 (6th Cir. 2012).

A petitioner's mental incompetence or incapacity that prevents a timely federal habeas petition "is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations." Ata, 662 F.3d at 742. Thus, "[t]o obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations." Id. Yet, "a blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required." Id.

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007). In the context of mental incompetence where a petitioner requests an evidentiary hearing to determine if the petitioner is entitled to equitable tolling, the Sixth Circuit has stated that "[a]lthough an evidentiary hearing need not be provided as a matter of right, an evidentiary hearing is required when sufficiently specific allegations would entitle the petitioner to equitable tolling on the basis of mental incompetence which caused the failure to timely file." Ata, 662 F.3d at 742.[4] Thus, to warrant an evidentiary hearing, a court must "determine whether [the petitioner's] factual allegations, accepted

---

[4] "If petitioner has not met this standard, it is of course discretionary with the district court whether or not to hold a hearing." Ata, 662 F.3d at 742 n.6.

8

as true, show that he is mentally incompetent and that his mental incompetence prevented him from timely filing his petition." Id. at 743.

As grounds for equitable tolling, Petitioner asserts that his mental illness, learning disabilities, and educational deficits prevented him from complying with § 2244's statute of limitations. Petitioner contends that these deficits made it impossible for him to interpret and correctly apply § 2244's one-year statute of limitations as evidenced by his filing of his federal habeas petition on April 1, 2013, that was ten days before the one year anniversary of the Tennessee Supreme Court's denial of his application for permission to appeal on April 11, 2012. Petitioner argues that "[i]t appears obvious that [Petitioner] understood 28 U.S.C. 2244(d) to require him to file within a year of the final decision from the Tennessee courts, that he viewed the Tennessee Supreme Court's April [11, 2012] decision as that final decision, and that he filed within a year of such date." (Docket Entry No. 48 at 3; see also Docket Entry No. 23).

Petitioner also seeks an evidentiary hearing to determine if he has met his burden of establishing equitable tolling by proving the extent of his alleged incompetence and the causal connection between his incompetence and his failure to comply with the statute of limitations. In support, Petitioner submits his prior school records and a Tennessee Department of Corrections ("TDOC") mental health report. (Docket Entry Nos. 48-1 and 48-2). In response (Docket Entry No. 50), the Respondent contends that ignorance of the law and educational deficiencies are not grounds for equitable tolling and that Petitioner is unable to make a sufficient threshold showing of the existence of severe mental illness during the limitations period or a causal connection of his alleged mental illness to the untimely filing.

9

Petitioner argues that he was "just 21 years old at the time of his plea, he had no prior experience filing an appeal, let alone a federal habeas corpus action," and that "he interpreted § 2244(d) to the best of his ability and complied with his understandable interpretation of its one-year statute of limitations." (Docket Entry No. 48 at 3). In support, Petitioner cites his learning disabilities in school, poor grades throughout school and that he dropped out of school in the ninth grade. Id. at 3; Exhibit A.

Yet, the Sixth Circuit "has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable tolling.'" Allen v. Yukins, 366 F.3d 396, 403 (6th Cir. 2004) (citation omitted). Further, "an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations . . . ." Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002); Pinchon v. Myers, 615 F.3d 631, 641–42 (6th Cir. 2010) (A habeas petitioner's mild mental retardation is not grounds for equitably tolling the limitations period in the absence of any indication that the mild mental retardation made him unable to manage his court filings or participate in the court proceedings); Warren v. Lewis, 365 F.3d 529, 531, 532 n. 2 (6th Cir. 2004) (expressing "grave doubt" that habeas petitioner's 71 I.Q. would justify equitable tolling); Turner v. Mills, 219 F. App'x 425, 429 (6th Cir. 2007) (emphasis in the original) (noting that while the petitioner's learning disability, bouts of depression and migraine headaches, might make pursuing federal habeas relief "more difficult," they did not prevent the petitioner from filing his petition altogether and, therefore, weighed against the application of equitable tolling).

Based upon the authorities cited, Petitioner's ignorance of the law, poor education and alleged learning disability do not establish legal bases for equitable tolling. Further, the factual record does not support Petitioner's assertions. Petitioner's pro se state post-conviction petition is detailed with

cognizable claims and supported by on-point legal citations, as is his pro se federal habeas brief. (Docket Entry No. 20-1 at 13-24; Docket Entry No. 10). Moreover, Petitioner cites that his pro se federal habeas petition was filed within a year of the Tennessee Supreme Court declining his application for permission to appeal. (Docket Entry Nos. 23 and 48). Petitioner's ignorance or mistake of law is not a circumstance beyond his control, as is required under equitable tolling.

As to Petitioner's assertion that his mental illness prevented him from complying with § 2244's statute of limitations, Petitioner cites a June 20, 2013 TDOC mental health report that diagnosed Petitioner with a psychotic disorder and as having "unusual thoughts." (Docket Entry No. 48-2).

For tolling based upon a petitioner's mental condition or incompetence, the habeas petitioner must make a threshold showing of incompetence and proof that his incompetence affected his ability to file a timely habeas petition. Ata, supra, Nowak v. Yukins, 46 F. App'x 257, 259 (6th Cir. 2002). This record, however, does not reflect that Petitioner was incompetent or incapable of preparing and filing his § 2254 petition. Petitioner does not present any evidence that Petitioner suffered from a psychotic disorder prior to the running of the statute of limitations or that Petitioner has a history of such a disorder other mental illness or that such a disorder was a causal link with the untimely filing. There was not any issue with Petitioner's competency during his state proceedings, and Petitioner even represented himself at his post-conviction hearing. (Docket Entry No. 20-1 at 67). Also, Petitioner asserts that is guilty plea was based upon ineffective assistance of counsel, not because of mental incompetence. Further, as stated previously, Petitioner's pro se state post-conviction petition is detailed with cognizable claims and supported by on-point legal citations, as is his federal habeas brief. (Docket Entry No. 20-1 at 13-24; Docket Entry No. 10). Petitioner's pro se federal habeas petition and other pro se filings in this action also reflect orderly, cogent thought. Petitioner's belief that the statute

of limitations ran from the date that the Tennessee Supreme Court denied his application for permission to appeal reflects a simple mistake of law that is not a circumstance beyond his control, as is required under equitable tolling.

Unlike the petitioner in Ata who had a long record of mental illness, was deemed incompetent to stand trial and sent to a state psychiatric facility, and in his federal habeas action asserted "two specific ways—being hospitalized and medicated—in which his mental illness prevented him from understanding and complying with AEDPA's statute of limitations," Ata, 662 F.3d at 744, 738-39, 743, Petitioner here has not asserted sufficient specific allegations that would entitle him to equitable tolling on the basis of mental incompetence that caused the untimely filing, requiring an evidentiary hearing. Nor does the record support a finding of such mental incompetency.

For these reasons, the Court concludes that Petitioner has failed to establish grounds for equitable tolling and is not entitled to an evidentiary hearing.

Accordingly, Petitioner's amended petition (Docket Entry No. 39) should be dismissed as untimely.

ENTERED this the 9th day of February, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge